UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PERCY SPURLOCK | ) | |
| | ) | |
| v. | ) | No. 2:15 CV 260 |
| | ) | (arising from No. 2:13 CR 37) |
| UNITED STATES OF AMERICA | ) | |

## OPINION and ORDER

Percy Spurlock has filed a motion (DE # 47, DE # 51)[1] challenging his sentence pursuant to 28 U.S.C. § 2255. For the reasons identified below, Spurlock's motion will be denied.

I.      BACKGROUND

On December 11, 2013, this court held a change a plea hearing regarding Spurlock's plea of guilty to the charge of possession with intent to distribute crack cocaine. (DE # 25.) Spurlock's plea was made pursuant to his plea agreement (the "Agreement") with the government. (DE # 24.) On December 17, 2014, this court sentenced Spurlock to a term of 151 months of imprisonment, a term of supervised release, and payment of a special assessment. (DE # 43.)

Spurlock now seeks to challenge the length of the sentence this court imposed. (DE # 47.) Spurlock identifies three grounds in support of his motion. In Ground One, Spurlock argues that his attorney abandoned him after he was sentenced and failed to

---

[1] One week after filing his motion (DE # 47) on the prescribed form, Spurlock filed a "Petition in Support of Motion" (DE # 51) which provides additional details and grounds. The court treats the latter filing as an amendment of the first, and considers the filings to constitute one motion.

file a direct appeal. (DE # 47 at 4.) He claims that he attempted to contact his attorney after the sentencing, but his attorney never responded. (*Id.*) In Ground Two, Spurlock claims that he did not knowingly and voluntarily enter into his plea agreement. (*Id.* at 5.) According to Spurlock, his attorney told him that if he pleaded guilty, he would only receive a 36-month term of imprisonment. He argues that he never would have entered into the plea agreement if he knew that he could be sentenced to a 151-month term of imprisonment. (DE # 51 at 5.) In Ground Three, Spurlock argues that his sentence was improperly enhanced pursuant to Sentencing Guideline 4B1.1(b)(3). (*Id.* at 7.)

## II.   LEGAL STANDARD

A § 2255 motion allows a person in federal custody to attack his or her sentence on constitutional grounds, because it is otherwise illegal, or because the court that imposed it was without jurisdiction. Rule 4 of the Rules Governing § 2255 Proceedings requires the court to promptly examine the motion. "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *Id.*

## III.  DISCUSSION

In his plea agreement, Spurlock explicitly agreed to waive his right to challenge any aspect of his conviction or sentence, including a challenge pursuant to 28 U.S.C. §

2

2255.² Appeal waivers, such as the waiver in Spurlock's plea agreement, are enforceable unless a defendant makes a claim of ineffective assistance of counsel regarding the negotiation of the plea agreement, or some other claim which invalidates the plea agreement (e.g., it was the product of coercion). *See Hurlow v. United States*, 726 F.3d 958, 964-66 (7th Cir. 2013). Spurlock confronts that issue here by claiming that his decision to plead guilty completely depended on his attorney's assurance that his sentence would be no longer than 36 months, and that he would never have entered the plea agreement if he knew he would ultimately receive a 151-month sentence. (DE # 48 at 1.) While Spurlock does not challenge the negotiation of the waiver itself, he does sufficiently claim that he did not enter the plea agreement knowingly or voluntarily. *See id.* at 965 ("[A]n attorney's ineffectiveness with regard to the plea agreement as a whole, and not just the specific waiver provision at issue, renders the waiver unenforceable."). Thus,

---

² Spurlock's appeal waiver states the following:
I understand that the law gives a convicted person the right to appeal the conviction and sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offense as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and all components of my sentence or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to the negotiation of this plea agreement, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.
(DE # 24 at 5.)

before proceeding further, this court must determine whether Spurlock entered into the Agreement knowingly and voluntarily and with the effective assistance of counsel.

    A.    *Spurlock's Plea Agreement was Knowing and Voluntary*

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal citation omitted). A plea is voluntary "'when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea[.]" *United States v. Moody*, 770 F.3d 577, 581 (7th Cir. 2014) (*quoting United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995)). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). "To determine if a defendant knew and understood the plea agreement, we must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge." *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010).

Spurlock's plea agreement supports a finding that he entered the Agreement knowingly and voluntarily. (*See* DE # 24.) The language of the plea agreement is plain and clear. In the Agreement, Spurlock confirmed that he has the ability to read, write, and speak the English language, and it is clear from his *pro se* se filings and his comportment at his change of plea hearing that he is intelligent and able to speak and

4

write well in the English language. In the Agreement, Spurlock confirmed that he: read and discussed the Agreement with his counsel; he understood his rights and the consequences of the plea agreement; and understood that under the Sentencing Guidelines the court would determine the applicable Guideline range. The Agreement explicitly stated that the maximum possible term of imprisonment for the offense to which he pleaded guilty was 20 years. In the Agreement, Spurlock also confirmed that he understood that the court was not bound to follow any agreements with, or recommendations by, the government regarding the length of his sentence. Finally, in the Agreement Spurlock confirmed that he entered into the plea agreement voluntarily, and that no promises had been made to him other than those contained in the Agreement.

This court's plea colloquy with Spurlock during his change of plea hearing also demonstrates that Spurlock entered his plea knowingly and voluntarily.[3] During the hearing Spurlock confirmed, under oath, that: he fully discussed the charges with his counsel; he was fully satisfied with the representation and advice provided by his counsel; he had read and discussed the plea agreement with his counsel; he understood the terms of the plea agreement; no one had made any promises or assurances to him (other than those contained in the Agreement) that induced him to sign the plea

---

[3] Because there was no appeal, no official transcript of the plea hearing was ordered. However, a rough draft exists in the form of the court reporter's "real time" transcription, and the undersigned has used that to refresh his memory as to the matters covered at the plea hearing.

agreement; he understood the court was not bound by the recommendations in the Agreement and could impose a sentence more severe than what he anticipated; he understood that the maximum term of imprisonment could be 20 years; he discussed with his counsel how the Guidelines might apply to his case; he understood that the court would not be able to determine the Guideline range until after the presentence report had been completed; he understood that the court could impose a sentence greater than the Guideline range; he understood that by signing the Agreement he waived any right to appeal or contest his conviction and sentence; and finally, he confirmed that he understood that the Guideline range and sentence ultimately imposed could differ from any estimate his attorney may have given him. At the end of the hearing, this court asked Spurlock whether he had any questions and whether he understood everything fully and completely. Spurlock answered in the affirmative.

The Seventh Circuit has often rejected a defendant's post hoc assertions that his plea was not knowing and voluntary due to his counsel's erroneous sentence prediction. In such cases, the Seventh Circuit has found that any misunderstanding was cured when the district court advised the defendant of the possible consequences of his plea. *See e.g. United States v. Scholtes*, 447 F. App'x 730 (7th Cir. 2011); *Chapa*, 602 F.3d at 868–69; *United States v. Bowlin*, 534 F.3d 654, 660 (7th Cir. 2008); *United States v. Gilliam*, 255 F.3d 428 (7th Cir. 2001); *Bridgeman v. United States*, 229 F.3d 589 (7th Cir. 2000).

The same is true in this case. Spurlock's present claims – that he did not understand what was occurring at the plea hearing and simply answered affirmatively

to this court's questions because that is what his attorney told him to do – are directly refuted by the record in this case. Spurlock was placed on notice by the plea agreement, and by this court, that he could be sentenced to a term of up to 20 years in prison. Moreover, this court made sure that Spurlock understood that the sentence he ultimately received could be higher than any prediction his counsel had given him. A defendant's statements during a plea hearing are presumed to be true. *United States v. Johnson*, 699 F. App'x 563, 564 (7th Cir. 2017); *Chapa*, 602 F.3d at 869. Thus, this court finds that Spurlock entered his plea knowingly and voluntarily.

      B.      *Spurlock has not Demonstrated Ineffective Assistance of Counsel*

This court next considers Spurlock's claim that he received ineffective assistance of counsel in deciding to enter his plea agreement. There is a two-part standard for determining whether a defendant received ineffective assistance of counsel in negotiating and entering a plea agreement. *Hill*, 474 U.S. at 57. First, the defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. *See also Morales v. Boatwright*, 580 F.3d 653, 663 (7th Cir. 2009). "In the plea-bargaining context, 'we have noted that a reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Spiller v. United States*, 855 F.3d 751, 755 (7th

7

Cir. 2017) (internal citation omitted).

A defendant cannot establish ineffective performance based on his counsel's erroneous sentence prediction alone. "[Defense] counsel's alleged miscalculation, standing alone, could never suffice to demonstrate deficient performance unless the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all of the relevant facts and applicable legal principles." *Bridgeman*, 229 F.3d at 592. "Although a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency . . . The salient question is whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir. 2006). *See also United States v. Edwards*, 606 F. App'x 851, 853 (7th Cir. 2015) (rejecting defendant's ineffective assistance claim because defendant did not develop any argument that his counsel's erroneous sentencing prediction was objectively unreasonable); *United States v. Cieslowski*, 410 F.3d 353 (7th Cir. 2005) (defense counsel's failure to utilize correct Guidelines to advise client as to possible sentence demonstrated negligence, but not ineffective assistance, because there was no evidence that counsel's error resulted from a lack of a good-faith effort).

Here, Spurlock has not demonstrated, or alleged, that his counsel's erroneous prediction was made in bad-faith. However, even if he could establish deficient performance, his claim would nevertheless fail because he has not demonstrated

prejudice.

A defendant establishes the prejudice prong of his ineffective assistance claim by demonstrating that there is a reasonable probability that he would not have pled guilty absent his attorney's erroneous advice. In doing so, "the petitioner must do more than simply allege 'that he would have insisted on going to trial'; he must also come forward with objective evidence that he would not have pled guilty. Objective evidence includes the nature of the misinformation provided by the attorney to the petitioner and the history of plea negotiations." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (internal citation omitted).

Here, Spurlock has only his own assertions that he would not have accepted the plea agreement if he had known that he could be sentenced to 151 months in prison. However, the objective evidence, the plea agreement and his statements during the change of plea hearing, demonstrate that he entered the plea agreement aware of the potential consequences. Thus, the objective evidence refutes his suggestion that he would have insisted on going to trial, but for his attorney's miscalculation. *See Morales*, 580 F.3d at 663 ("There is absolutely no reason, beyond [defendant's] contention, to think that he would not have pleaded guilty even if we accept his contention that he did not fully understand the sentencing consequences of his plea.").

In *Bethel v. United States*, 458 F.3d 711 (7th Cir. 2006), the Seventh Circuit considered, and rejected, a defendant's claim that his attorney provided ineffective assistance by failing to warn him, prior to entering a plea agreement, that he would be

9

sentenced as a career offender. In rejecting the defendant's ineffective assistance claim, the Seventh Circuit emphasized the importance of the exchanges between the district court and the defendant. During the plea colloquy, the court "informed Bethel in six or seven different ways that he could not rely on any particular predictions or discussions about a possible sentence when he entered his plea." *Id.* at 718. Thus, by confirming that he understood and still wanted to plead guilty, the defendant "was affirming that his guilty plea was not made in reliance of a particular sentence. He cannot now be heard to complain that he would not have pled guilty if he had known his sentence would be more severe than his lawyer predicted. He specifically disclaimed that risk at his change of plea hearing." *Id.* This was true in spite of the fact that his attorney's prediction was "mistaken by a considerable margin." *Id.* at 719. The Court noted, "[t]hat margin might give us pause if Bethel had not repeatedly insisted at his plea hearing that he was not relying on a particular sentence in entering his plea." *Id.* (internal citations omitted).

Spurlock's ineffective assistance claim fails for the same reasons identified in *Bethel*. Here, as in *Bethel*, this court warned Spurlock in a variety of different ways that he could not rely on any prior predictions or discussions regarding his sentence, and that he faced up to 20 years in prison if he chose to plead. Spurlock understood this and nevertheless wanted to plead guilty. He cannot now claim that he did not know the consequences of his plea agreement. "Justice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [the defendant] to renege on his representation under oath to the district court that there were no promises made to him

to induce his guilty plea." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010). *See also Thomas v. United States*, 606 F. App'x 840 (7th Cir. 2015) (defendant suffered no prejudice from attorney's erroneous sentence prediction where district court warned defendant of sentencing consequences during plea colloquy); *Jacobson v. United States*, 258 F. App'x 45, 49–50 (7th Cir. 2007) (same).

Moreover, Spurlock's filings make clear that he does not want to invalidate his plea agreement and proceed to trial; he merely seeks to be resentenced to the 36-months he says his attorney promised. Perhaps Spurlock realizes that were he to go back to square one, two counts which were dismissed might be recharged, he would lose the benefit of a Sentencing Guidelines credit for accepting responsibility, and were he to be found guilty it is likely his sentence would be greater than the 151 months he received.

What is abundantly clear from all of the foregoing is this: Spurlock knowingly, freely, voluntarily, and intelligently entered into the Agreement knowing that he might not receive the sentence he was expecting, and nevertheless would remain bound by his Agreement. Knowing that he faced this risk, he made a rational and intelligent decision to plead guilty, accepting the risk in return for the benefits provided by the plea agreement. Under these circumstances, Spurlock's challenges to his plea agreement must fail.

    C.    *Grounds One and Three have been Waived*

In light of this court's determination that Spurlock's plea agreement (and the appeal waiver contained therein) are valid, this court will not consider Spurlock's

remaining claims, as they are waived. "[O]nce a defendant has knowingly and voluntarily waived his right to appeal both in a plea agreement and in court under Rule 11(b), the Sixth Amendment does not require an attorney to disregard the waiver by complying with the defendant's request to file an appeal." *Solano v. United States*, 812 F.3d 573, 577 (7th Cir.), *cert. denied*, 137 S. Ct. 58 (2016).

## IV. CONCLUSION

For these reasons, it "plainly appears from the face of the motion . . . and the prior proceedings in the case" that Spurlock is not entitled to relief, and thus this court is required to dismiss his § 2255 motion pursuant to Section 2255 Habeas Corpus Rule 4. Accordingly, Spurlock's motion to vacate (DE ## 47, 55) is summarily **DENIED** and **DISMISSED**. The motion to withdraw (DE # 55) is **GRANTED**. The court **DIRECTS** the Clerk to **ENTER FINAL JUDGMENT** dismissing the collateral civil proceeding (2:15 CV 260) with prejudice, and to give notice to defendant-movant Spurlock.

SO ORDERED.

Date: June 1, 2018  s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT